Michael O. Hardison, Esq.
Edward W. Floyd, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SWISS MARINE SERVICES S.A.,<br><br>      Plaintiff,<br><br> -against-<br><br>LOUIS DREYFUS ENERGY SERVICES L.P.,<br><br>      Defendant. | 08 Civ. 7981 (LBS)<br>ECF CASE<br><br><br>**VERIFIED COMPLAINT IN**<br>**ADMIRALTY** |

Plaintiff, Swiss Marine Services S.A. ("Plaintiff"), by its attorneys, Eaton & Van Winkle LLP, for its complaint against Defendant, Louis Dreyfus Energy Services L.P. ("Defendant"), upon information and belief, alleges as follows:

### JURISDICTION

1. This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims.

### PARTIES

2. At all relevant times, Plaintiff, was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at 36, avenue Cardinal-Mermillod, 1227 Carouge, Geneva, Switzerland.

3. At all relevant times, Defendant was and still is a corporation or other business entity organized and existing under the laws of the State of Delaware.

4. At all relevant times, non-party Ifchor Capes S.A., ("Broker") was and still is a foreign corporation or other business entity that acted as brokers in connection with the events set forth in this Complaint.

## UNDERLYING EVENTS

5. On or about August 29, 2008, Plaintiff, as owner of the M.V. Princess Katherine, and Defendant, as charterer, entered into a maritime contract of charterparty, in which Defendant agreed to charter from Plaintiff the M.V Princess Katherine for the carriage of a cargo of coal from Richards Bay Coal Terminal, South Africa, to Dunkirk, Le Havre or Montoir, France.

6. On or about August 29, 2008, Broker, by transmitting a clean fixture notice (the "Fixture Notice") and by other means, provided to Plaintiff and Defendant confirmation that the terms of a charterparty dated August 29, 2008 had been fixed (a copy of the Fixture Notice transmitted on August 29, 2008 is annexed hereto as Exhibit A).

7. The Fixture Notice set forth all essential terms of the maritime agreement between Plaintiff and Defendant.

8. The Fixture Notice identified, *inter alia*, the subject vessel, the charterer, the owner, the period of time for loading the vessel, the load port, the discharge port(s), and the freight rates.

9. The Fixture Notice obligated Defendant to supply a cargo of 75,010 metric tons of coal.

10. The Fixture Notice obligated Defendant to pay freight for the agreed upon voyage at

-2-

a rate of at least $34.75 per metric ton.

11.    Following transmittal of the Fixture Notice, the parties set the cargo amount at 75,000 metric tons with 10 percent, more or less, at Plaintiff's option.

## FIRST CAUSE OF ACTION

12.    Paragraphs 1 through 11 of this Complaint are repeated and realleged as if the same were set forth here at length.

13.    Following transmittal of the Fixture Notice, Defendant unequivocally repudiated the existence of the charterparty between Plaintiff and Defendant, despite Plaintiff being ready, willing and able to perform the contract, and Defendant thereby made an anticipatory breach of the subject maritime contract.

14.    Plaintiff, by reason of the premises, has sustained damages, as best can now be estimated, in the amount of $2,832,125.00.

## SECOND CAUSE OF ACTION

15.    Paragraphs 1 through 11 of this Complaint are repeated and realleged as if the same were set forth here at length.

16.    Defendant has failed to perform its obligations pursuant to the charterparty between Plaintiff and Defendant and has thereby breached the subject maritime contract.

17.    Plaintiff, by reason of the premises, has sustained damages, as best can now be estimated, in the amount of $2,832,125.00.

## **RULE B ATTACHMENT**

18.    Paragraphs 1 through 17 of this Complaint are repeated and realleged as if the same were set forth here at length.

19.    The Fixture Notice incorporated terms used in an earlier charterparty, dated February 25, 2008, that was also entered into between Plaintiff and Defendant (the "Pro-Forma Charterparty") (a copy of the Pro-Forma Charterparty is annexed hereto as Exhibit B).

20.    Pursuant to the terms incorporated from the Pro-Forma Charterparty, the Fixture Notice provides that all disputes between the parties are to be resolved by arbitration in London pursuant to English law.

21.    This action is brought to obtain jurisdiction over Defendant and to obtain security in favor of Plaintiff in respect of its claim against Defendant and in aid of anticipated London arbitration proceedings.

22.    This action is also brought to obtain security for additional sums to cover Plaintiff's anticipated costs in arbitration and arising from interest, all of which are recoverable under English law and the rules applicable to London arbitration (see *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002) where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.").

23.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets

within this District comprised of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant ("Assets"), including but not limited to Assets at, being transferred through, or being transferred and/or wired to or from various banking institutions and/or other business entities.

24. The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff against Defendant includes: (i) the principal claim for anticipatory breach of contract, or alternatively for breach of contract, in the amount of $2,832,125.00; (ii) interest, which is recoverable in London arbitration, in the amount of $400,000.00; and (iii) estimated attorney's fees and disbursements, together with the costs of the arbitration, including arbitrators fees, all of which are recoverable in London arbitration, in the amount of $400,000.00, for a total claim of $3,632,125.00.

## RESERVATION OF RIGHTS TO ARBITRATE DISPUTES WITH DEFENDANT

25. The charter party provides that any disputes between Plaintiff and Defendant are to be arbitrated in London pursuant to English law.

26. Plaintiff expressly reserves the right to arbitrate the merits of its dispute with Defendant and brings this action solely to obtain *quasi-in-rem* jurisdiction and security for its damages, interest and the costs of London arbitration.

WHEREFORE, Plaintiff prays as follows;

1. That process in due form of law according to the practice of this Court may issue

against Defendant;

2. That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the district owned by Defendant or in which Defendant has a beneficial interest up to the amount of $3,632,125.00.

3. That judgment be entered against Defendant and in favor of Plaintiff in the amount of $3,632,125.00, plus interest, costs, and attorneys' fees; and

4. That the Court grant such other, further and different relief as may be just, proper and equitable.

Dated: New York, New York
September 15, 2008

EATON & VAN WINKLE LLP


By: /s/ Edward W. Floyd
Edward W. Floyd

3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

## **VERIFICATION**

EDWARD W. FLOYD, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am an attorney associated with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2. I have read the foregoing complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are communications and other papers received from the Plaintiff's attorneys in England and an examination of the papers relating to the matters in suit.

3. The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this district.

Dated:  New York, New York
       September 15, 2008

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Edward W. Floyd
Edward W. Floyd

## **DECLARATION**

Edward W. Floyd, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am an attorney associated with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I am familiar with the facts of this matter.

2. I execute this declaration in compliance with the provisions of Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims and in compliance with the provisions of Local Admiralty Rule (B)(1).

3. To the best of my information and belief, Defendant, Louis Dreyfus Energy Services L.P., cannot be found within this District as defined by the relevant state laws, the Federal Rules of Civil Procedure, and as construed in current case law within the Southern District of New York.

4. I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database. This database provided that Defendant is a foreign corporation licensed to do business in New York but did not identify Defendant as having any agent for service of process within the geographic confines of the Southern District of New York.

5. I also checked the internet telephone directories for New York state and contacted the telephone information operator regarding a listing for Defendant within New York City. None of these sources contained a listing for Defendant within New York City.

6. I have been unable to locate any general or managing agents within this District for

Defendant.

7. I have additionally called Louis Dreyfus Holding Company's offices located in New York City and was advised that their offices in New York City did not include any office maintained by Defendant.

8. I have additionally reviewed current case law within the Southern District of New York and am of the opinion that Defendant cannot be found in the Southern District of New York within the meaning of Rule B(1).

9. It is for the foregoing reasons that I request, on behalf of Plaintiff, that the Court execute the accompanying Order For Issuance of Process of Maritime Attachment and Garnishment.

Dated:   New York, New York
         September 15, 2008

I declare under the penalty of perjury that the foregoing is true and correct.

/s/ Edward W. Floyd
Edward W. Floyd

# EXHIBIT A

```
29/08/08 : 12.52   ---  Incoming E-mail A-F2372 ...                peter

From:  "Marco Milano" <panamax@ifchor.ch>
To: chartering@swissmarine.ch
Date: Fri, 29 Aug 2008 12:52:10 +0200
Subject: CLEAN RECAP

      *** See Attachments (2008-08) for :
OCEAN_VANGUARD__EX_DONG_A_RHEA_OR_SUB__-_LDE_-_CP_DA--__2008_2.pdf ***

Doc-No. 5277274   29/AUG/2008  12:51 h   MM

TO DREYFUS ENERGY K.ATT. GERARD
TO SWISSMARINE     K.ATT. PETER

RE RBAY / RDAM

WE ARE PLEASED TO RECAP THE CLEAN FIXTURE CP DD 29TH AUG 2008
=====================================================================

MV PRINCES KATHERINE OR SUB
OBO 1986
164100 DWAT ON 18.49
LOA/BEAM 275/45.05

FOR

ACCOUNT LOUIS DREYFUS ENERGY SERVICES LP
75,010 MT COAL
FULL OR PART-CARGO
LOADING RBCT
SEPT 16/30
DISPORT, IN CHOPT : A,R,A, DUNKIRK QPO, LE HAVRE MC6 OR SIPHA, MONTOIR,
FOS, HIT
SCALE LOAD / 25000 SHINC DISCH
TT 18 /12 HOURS USC
DEM / DES AS PER C/P
FREIGHT RATE :
USD/PMT 35.25 FIOT BSS ROTTERDAM, USD/PMT 34.75 FIOST BSS LE HAVRE
OTHER PORTS TO  BE AGREED BSS SAME TC EQUIVALENT (RBAY/RDAM) REDEL SKAW/PASSERO
RGE INCL UK.
     VESSEL : MAX 25 YEARS OLD OVERAGE INS ABOVE 15 YEARS FOR OWNERS ACCT
3.75PCT ADDCOMM + 1.25PCT IFCHOR
OTHERWISE AS PER MV DONGA RHEA OR SUB/LD ENERGY CP DD 25.02.2008
(HEREATTACHED)  LOGICALLY AMENDED AS PER MAINTERMS AGREED
END

THKS VM FOR THIS FIXTURE

REVERTING WITH MATRIX/DIFFERENTIALS

BEST REGARDS
IFCHOR SA

****************************************************************
IFCHOR GROUP SA, Place Pépinet 1, 1003 Lausanne, Switzerland
as brokers only

capes@ifchor.ch - panamax@ifchor.ch - handy@ifchor.ch
securities@ifchor.ch - operations@ifchor.ch - capesops@ifchor.ch
                       www.ifchor.com

  Phone: +41 21 310.31.31 - Fax: +41 21 310.31.00/01
     Tlx: 450 351 IFC CH -  450 352 IFOPS CH
*******************************************************************
```

# EXHIBIT B

# RICHARDS BAY

# COAL CHARTER PARTY

*Lausanne 25th February* .................................... ~~19~~*2008* ....

| | | | |
|---|---|---|---|
| **CHARTERERS** | | IT is this day mutually agreed between MESSRS *Louis Dreyfus Energy Services L.P.* | 1 |
| **AND** | | of Johannesburg, as the CHARTERERS, and Messrs *Swissmarine Services S.A.*................................ | 2 |
| **OWNERS** | | as the OWNERS* of the good motorship (Tonnage to be nominated) *M/V "DONGA RHEA OR SUBSTITUTE" maximum 20 years old Vessel to be nominated as per Richards Bay Coal Terminal Regulations.* | 3 |
| | | (*see Clause No. 21)*Vessel not to be blacklisted by R.B.C.T. or under an United Nations rstraint* | 4 |
| | | Classed: Lloyds 100 A.1, or equivalent and to be so maintained for the duration of this Charter Party/Contract. | 5 6 |
| ~~DESCRIPTION~~ | | ~~And as otherwise described hereunder:~~ ~~Tons deadweight (Summer):-~~ ......................... ~~Flag:-~~ ......................... ~~Built:-~~ ......................... ~~Fully loaded (Summer) draft:-~~ ........................ ~~Selftrimming Bulkcarrier~~ ......................... ~~Geared or Gearless:-~~ ........................ ~~Number of hatches:-~~ ......................... ~~Number of holds:-~~ ........................ ~~Speed (about):-~~ ......................... ~~Bridge:-~~ ............. ~~Machinery:-~~ ................ ~~L.o.a:-~~ ................. ~~Beam:-~~ ............. | 7 8 9 10 11 12 |
| **POSITION** | | Now....................................................................................................................................... and expected to load under this Charter Party, about............................................................. | 13 14 |
| **LOADING PORT** | 1. | THAT the said vessel being tight, staunch and strong and in every way fitted for the voyage, shall, with all convenient despatch sail and proceed to *one safe berth* RICHARDS BAY *Coal Terminal* (Natal, Republic of South Africa), and there load, always safely afloat, (at the Richards Bay Coal Terminal Company Appliance berths), as ordered. *R.B.C.T. Regulations are deemed incorporated in this fixture and the subsequent Charter Party.* ** | 15 16 17 18 |
| | | If necessary for vessel to be warped/moved at the Appliance berths, cost to be for Owner's account but time used to count as Laytime. | 19 20 |
| | | ~~A full and complete~~ *One part* cargo (for the purpose of this Charter Party) *of Coal in bulk - one ore two grade(s) to be separated within vessel's natural segregations.* | 21 |
| **CARGO SIZE** | | COAL, not exceeding: *70,000*........................................................metric tons (of 1000 kilos) not less than: *,75,000*......................................................metric tons (of 1000 kilos) quantity *10% more or less* in *Owners'* ~~Master's~~ opinion and not exceeding what vessel can reasonably stow and carry over her tackle, apparel, provisions and furniture. | 22 23 24 25 |
| **F.I.O.T.** | | The said cargo to be brought alongside and loaded and spout trimmed aboard the vessel, free of expense to the vessel and being so laden shall therewith proceed with all convenient despatch to | 26 27 |
| **DISCHARGE PORT** | | *Rotterdam* ............................................................................................................................. and there deliver the cargo free of expense to the *Charterers* ~~vessel~~ *into barges* ~~one/two safe berth(s)~~, always afloat, as ordered by the Receivers or their Agents. | 28 29 30 |
| **FREIGHT RATE** | 2. | FREIGHT, to be paid at the rate of *USD31.50 - (Thirty One Dollars and Fifty Cents)* .................................................................................................................................................. per metric ton (of 1000 kilos) *free in, liner out into barge* on Bill of Lading weight ; in full of all Port Charges, Pilotages, Harbour dues, Taxes and Consulages on the vessel (and as per Clause 14).*Charterers' option to discharge liner out via shore at European Bulk Services Terminal in Rotterdam with additional Euro1.75 per metric ton.* | 31 32 33 34 |
| **FREIGHT** ~~**PAYMENT**~~ | | The Freight shall be paid as follows-- Ninety-*five* Percent within *five* ~~seven~~ days of release of signed Bills of Lading to Charterers or their Agents and shall be non-returnable, but deemed earned on shipment, ship and/or cargo lost or not lost. The remainder of the Freight *plus demurrage, if any, or less despatch, if any, at loading port* shall be | 35 36 37 38 |

|                              |    | payable *25 days after* ~~upon~~ receipt of ~~advice of right and true delivery of the cargo.~~ *two copies of time-sheets and freight invoice in Charterers' office.* | 39 |
|------------------------------|----|---|----|
| (FREIGHT DEDUCTIONS)         |    | Charterers have the right to deduct from the Ninety-*five* percent Freight payment, full commissions in terms of this Charter Party and despatch at the loading port (if any) ~~and vessel's loading port disbursements, if not previously paid by Owners.~~ | 40<br>41<br>42 |
|                              |    | (Charterers are also entitled to deduct any extra insurance premium paid on account of vessel's age, flag, Class or Ownership, if the vessel incurs same. London insurance market conditions to apply.) | 43<br>44 |
| (COMMISSION)                 |    | Owners agree to pay a *brokerage* commission of .....*1.25%* on the gross amount of Freight, Deadfreight and Demurrage (if any) to *Messrs. Ifchor Capes S.A., Lausanne,* ~~Charterers (for division with others, as agreed),~~ which deemed earned upon completion of loading. ~~and is deductable from Freight, as above.~~ | 45<br>46<br>47 |
| (FREIGHT<br><br>BENEFICIARY) |    | Freight to be paid *by telegraphic transfer* to:<br>*NORDEA BANK FINLAND PLC*<br>*LONDON BRANCH CITY PLACE HOUSE 55 BASINGHALL STREET LONDON EC2V 5NB*<br>*UNITED KINGDOM*<br>*ACCOUNT NO.:    0042228601 - USD*<br>*IBAN:           GB77NDEA40487842228601*<br>*SWIFT:          NDEAGB2L*<br>*BENEFICIARY:    SWISSMARINE SERVICES SA, GENEVA, SWITZERLAND*<br>*MENTIONING:*<br>CREDIT: ............................................................................................................................<br>WITH: ................................................................................................................................. | 48<br><br><br><br><br><br><br><br>49<br>50 |
| LAYDAYS AND<br>CANCELLING    | 3. | LAYDAYS for loading not to count before *10th March 2008*............................................................<br>and if the vessel is not ready to load by *24th March 2008*.............................................................<br>of if any wilful misrepresentation be made respecting the size, position or state of the vessel, Charterers have the option of cancelling the *(respective individual) voyage, such option to be declared latest upon vessel giving Notice of Readiness.<br>~~*(In the event of more than one voyage under this Charter-Party, cancellation shall refer to the voyage in question and shall not mean cancellation of any other part of this Contract, still to be performed. The Contract shall continue/resume from the next due voyage).~~ | 51<br>52<br>53<br>54<br>55<br>56<br>57<br>58 |
| LOADING<br><br>RATE<br>(SHINC) | 4. | THE cargo to be loaded at the average rate ~~of~~ *as per scale load as attached on full vessel's deadweight* ~~metric tons~~ per weather working day of<br>24 consecutive hours, Sundays, Saturdays and Holidays INCLUDED (but excluding 25th December), provided vessel can receive at this rate and provided vessel is always totally and fully available to the Charterers for this purpose.<br>Failing which, the time allowed for loading shall be extended proportionately.<br><br>(If loading has to be interrupted due to insufficient ballast pump capacity in relation to loading capacity, any such time lost shall NOT count as Laytime. Owners guarantee that any such stoppages shall not exceed 8 hours maximum). | 59<br>60<br>61<br>62<br>63<br><br>64<br>65<br>66 |
| LOADING<br><br>LAYTIME<br>(SHINC) |    | Time commencing, subject always to the undermentioned provisos, 18 hours *on full vessel's size* after Notice of Readiness<br>has been given by the Master, certifying that the vessel has arrived and is in all respects ready to load, whether in berth or not, *whether in port or not, whether in port or not, whether customs cleared or not*; such notice may be given at any time, Sundays, Saturdays and Holidays included (but excluding 25th December). Notice time, if used for loading, to count as laytime but only actual time used to count.<br>All Notices to be given in writing or by telegram by Master to the Charterers' Agent. If Notice given outside of normal business hours, Master to confirm same in writing at earliest commencement of business hours thereafter.<br>Any time lost subsequently by vessel not fulfilling requirements for Free Pratique or readiness to load in all respects, including Marine Surveyor's Certificate (and acceptable gas-free Certificate for OBO-carriers, or for any other reason for which the vessel is responsible, shall NOT count as Notice time, or as time allowed for loading.<br>Time taken steaming from anchorage to loading berth NOT to count as Laytime *or time on demurrage*. | 67<br>68<br>69<br>70<br>71<br>72<br>73<br>74<br>75<br>76<br>77<br>78<br>79 |
| ~~DISCHARGING RATE (SHINC)~~ | ~~5.~~ | ~~THE cargo to be discharged at the average rate of ..........................metric tons, per weather working day of 24 consecutive hours, Sundays, Saturdays and Holidays INCLUDED, provided vessel can deliver at this rate and provided vessel is always totally and fully available to Receivers for this purpose. Failing which, the time allowed for discharging shall be extended proportionately.~~ | 80<br>81<br>82<br>83 |
| ~~DISCHARGING RATE (SHEX)~~  | ~~5.~~ | ~~THE cargo to be discharged at the average rate of ..........................metric tons, per weather working day of 24 consecutive hours, Sundays, Saturdays and Holidays EXCEPTED unless used and then only actual time used to count as Laytime, provided vessel can deliver at this rate and provided vessel is always totally and fully available to the Receivers for this purpose. Failing which, the time allowed for discharging shall be extended proportionately.~~ | 84<br>85<br>86<br>87<br>88 |

| | | | |
|---|---|---|---|
| DISCHARGING LAYTIME (SHINC or SHEX) | | ~~Time commencing, subject always to the undermentioned provisos 12 hours after written Notice of Readiness is tendered and accepted by Receiver's Agent, after vessel is in Free Pratique and ready in all respects to discharge (with all necessary certificates, including acceptable gas free Certificate for OBO carriers), whether in berth or not. Notice time, if used to count but only actual time used to count.~~<br>~~Such Notice to be tendered in ordinary business hours.~~<br>~~Time taken steaming from anchorage to berth NOT to count as Laytime.~~ | 89<br>90<br>91<br>92<br>93<br>94 |
| DEMURRAGE AND DESPATCH | 6. | AT loading port, Charterers shall pay Demurrage, if incurred, at the rate of US$ *65,000*........................ per running day or pro rata for part thereof.<br>For all Laytime saved, with Laydays computed on Bill of Lading weight, Owners to pay Charterers Despatch at the rate of US$ *32,500*. per day or pro rata for part thereof. *Demurrage to be allocated pro rata over parcel actually loaded.*<br>~~At discharge port, Receivers shall pay Demurrage, if incurred, at the rate of US$ ........................ per running day or pro rata for part thereof.~~<br>~~For all Laytime saved, with Laydays computed on Bill of Lading weight, Owners to pay Receivers Despatch at the rate of US$ ........................ per day or pro rata for part thereof.~~ | 95<br>96<br>97<br>98<br>99<br>100<br>101<br>102 |
| STRIKES AND FORCE MAJEURE | 7. | STRIKES or lockouts or any accidents/breakdowns of the appliance or stoppages, on Railway, or at the loading/discharging places and/or River and/or Canal, due to weather, or any other Force Majeure causes occurring beyond the control of the Charterers/Receivers or Shippers/Consignees, which may directly affect the cargo for which the vessel is stemmed or the loading/discharging of the vessel always excluded unless the vessel is already on demurrage.<br>Charterers undertake to advise Owners promptly, in writing, of such instances and also without commitment, to indicate the extent in time of such Force Majeure.<br>At the loading port, in the event of any of the foregoing occurring and directly affecting the cargo/stem for the said vessel continuing for a period of seven days from the time of the vessel being certified ready to load in terms of this Charter Party, this voyage shall be come null and void, provided no cargo has been loaded.<br>In the event of any of the foregoing occurring after any cargo has been loaded and continuing for a period of seven running days, the Owners have the option of sailing with whatever cargo is onboard on being paid Freight as per the Charter Party for the quantity onboard only and performing the voyage in terms of this Charter Party or of remaining until loading is recommenced.<br>If the Owners elect to proceed with the Coal quantity as onboard, they are to have the option to load additional cargo from other port or ports.<br><br>In the event of any of the foregoing occurring when the vessel is already on Demurrage and provided no cargo has been loaded, Charterers at any time during such event/s and after the expiration of three days from the commencement thereof, give three days notice that they are prepared to cancel this voyage in respect of any time lost through such event/s but Charterers shall pay Demurrage up to the expiration of such notice only. Upon receipt of such notice, vessel may either thereupon sail or within 24 hours Owners shall inform Charterers in writing of their intention to remain until the termination of such event and then Charterers shall be obliged to load the vessel immediately upon termination of such event/s. | 103<br>104<br>105<br>106<br>107<br>108<br>109<br>110<br>111<br>112<br>113<br>114<br>115<br>116<br>117<br>118<br>119<br>120<br>121<br>122<br>123<br>124<br>125<br>126<br>127 |
| NOTICES | 8. | OWNERS/Master to give Charterer's Agent at Richards Bay (telegraphic address Richards Bay), 20,15,10, 7 and 5 days and 48 and 24 running hours notice of E.T.A. *and all further notices as required by Richards Bay Coal Terminal Regulations* | 128<br>129 |
| STEVEDORES AND AGENTS | 9. | STEVEDORES at Richards Bay to be employed by Charterers at Charterers expense. Stevedores at discharge port/s to be employed by Receivers at Receivers expense.<br><br>Stevedores and stowage to remain under the responsibility of the Master in loading and discharging. Stevedores/Trimmers shall be considered as the Owners servants and Charterers/Shippers/Receivers/Consignees are NOT responsible for any negligence, default or error in judgement of Stevedores/Trimmers employed in loading and discharging.<br>Vessel to be consigned to *Owners'* ~~Charterers~~ Agent at Richards Bay, Messrs ................................................<br><br>and *to Owners' Agents*................................ at discharge port.<br>In both cases Owners shall pay the customary fees. | 130<br>131<br>132<br>133<br>134<br>135<br>136<br>137<br>138 |
| ~~LIGHTERAGE~~ | ~~10.~~ | ~~ANY lighterage or lightening from carrying vessel at discharge port/s to be at Receivers expense and time to count as Laytime.~~<br>~~But if carrying vessel requires lighterage for its own account, if for any reason it is unable to enter discharge port/berth, on account of size/draft etcetera, then same to be for Owners account and time NOT to count. Time taken in steaming from anchorage/lightening place to discharge berth not to count as Laytime.~~ | 139<br>140<br>141<br>142<br>143<br>144 |
| ~~GRAB DISCHARGE~~ | ~~11.~~ | ~~VESSEL is guaranteed suitable for discharge by Receivers grabs. Coal to be loaded in lower holds only. No coal to be loaded in any areas not easily accessible to Receivers grabs but should any coal be loaded in any such areas, then extra expenses/time incurred at loading port for Owners account. Also any extra trimming (beyond spout trimming) necessary on account of vessel's construction to be for Owners account. Also any extra cost and/or time over and above that for normal grab discharge to be for Owners account.~~<br>~~Deeptanks, tunnels and all other provisions within vessels holds to be properly protected against damage by Stevedore's grabs, failing which Owners to be responsible for all consequences. Any dispute~~ | 145<br>146<br>147<br>148<br>149<br>150<br>151<br>152 |

| | | | |
|---|---|---|---|
| | | ~~regarding Stevedoring damage to be settled directly between Owners and Stevedores and any time occupied in repairing such damage not to count as Laytime.~~ | 153<br>154 |
| OVERTIME | 12. | OVERTIME shall be for the account of the party ordering same.<br>If ordered by Terminal Operators/Port Authority or their Nominees, then the actual cost of the overtime shall be shared equally between Owners and Charterers at Richards Bay ~~and between Owners and the Receivers at discharge port~~.<br>Officers and Crews overtime shall always be for the Owners account. | 155<br>156<br>157<br>158<br>159 |
| BILLS OF LADING | 13. | BILLS of Lading shall be prepared in accordance with the Draft Survey Weight Certificate or as otherwise required by Charterers, issued by an Independent Surveyor and shall be signed by the Master/Agents, Freight and Conditions as per this Charter Party, such Bills of Lading to be signed promptly and within twenty-four hours after vessel is loaded. | 160<br>161<br>162<br>163 |
| DUES/TAXES | 14. | ANY taxes and/or Dues on the vessel to be for the Owners account, at ~~both~~ loading ~~and discharging~~ port/s. Any Taxes and/or Dues on the cargo to be for the Charterers account at loading port ~~and Receivers account at discharge port/s~~. Any Dues and/or Taxes on the vessel by reason of having this cargo onboard to be for Charterers account at loading port ~~and for Receivers account at discharging port/s~~.<br>South African Income Tax, if any, at loading port to be for Owners account. ~~Quay Weight and Tonnage Dues and/or any similar Dues at discharging port/s for Receivers account.~~ | 164<br>165<br>166<br>167<br>168<br>169<br>170 |
| HATCHES & LIGHTS | 15. | ALL opening and closing of hatches and removal/replacing of beams at both loading and discharging ports for Owners account and time not to count as Laytime. Vessel to supply lights for night work as required. | 171<br>172<br>173 |
| SEAWORTHY TRIM | 16. | VESSEL to be left in seaworthy trim to Master's satisfaction to proceed between all berths/ports under this Charter Party. | 174<br>175 |
| EXCEPTIONS | 17. | THE Act of God, Enemies, the restraints of Princes and Rulers, or Peoples, including interference of Government Authorities or their Officials and Perils of the Seas, shall be mutually excepted. | 176<br>177 |
| ARBITRATION | 18. | ALL disputes from time to time arising out of this Charter Party/Contract or individual voyage shall, unless the Parties agree within six months of final discharge, on a single Arbitrator, be referred to the final Arbitrament of two Arbitrators, who shall be members of the Institute of Arbitrators in London, one to be appointed by each of the Parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and a Claimant's Arbitrator appointed within six months of final discharge and where this provision is not complied with, the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above unless objection to his acting be taken before the award is made.<br>English law to apply. | 178<br>179<br>180<br>181<br>182<br>183<br>184<br>185<br>186 |
| AVERAGE | 19. | AVERAGE, if any, to be settled at a place to be agreed upon with the Cargo Underwriters, according to York-Antwerp Rules 1974. Should the vessel deviate from the normal intended voyage under this Charter Party Master/Owners shall inform Charterers of same without delay. | 187<br>188<br>189 |
| LIEN/CESSOR | 20. | THE Charterers liability shall cease except for payment of Freight, as soon as the cargo is shipped and the Freight, Deadfreight and Demurrage (if any) at loading port are paid, Owners having a Lien on the cargo for the balance of Freight, Demurrage (if any) and "Average". | 190<br>191<br>192 |
| DISPONENT OWNERS | 21. | THE word "Owners" is understood to also include Disponent Owners and/or Timecharter Controllers or Managers of the vessel/s. | 193<br>194 |
| PROTECTIVE CLAUSES | 22. | P and I Bunker Clause and Chamber of Shipping War Risk Clauses 1 and 2 are deemed to be incorporated in this Charter Party. All Bills of Lading issued under this Charter Party/Contract shall contain General Clause Paramount, the New Jason and the New Both-to-Blame Collision Clause. | 195<br>196<br>197 |
| SUBLET- | 23. | CHARTERERS have the right to Sublet the vessel in whole or in part, they remaining liable for the due fulfilment of this Charter Party. | 198<br>199 |

*EXTRA INSURANCE  24  Age premium, if any, levied on the Vessel's over 15 years of age to be for Owners' account.*

*FORCE MAJEURE  25  If by reasons of any decisions, restrictions, directives and/or regulations of any regional grouping of nations, the Charterers and/or Owners are prevented from performing any of their obligations hereunder, they shall to such extent be relieved from their liability.*

*PART CARGO CLAUSE  26  In case of part cargo, laytime and demurrage to be prorated.*
*In case where the above cargo is loaded as part cargo in combination with other coal parcels from the same loading berth, following to apply:*
*If all coal is loaded or discharged at same time(i.e. not one parcel after the other) Owners will distribute the entire time used for all parcels on a prorata basis for each parcel.*

*If the loading is done separately, time used will count in full but time used to load other Coal before commencing or after completion the coal cargo covered under this Charter Party will not, i.e. these*

*periods are neutralised and time computation is stopped when the cargo under this Charter-Party is on board. Time lost in waiting for berth always to be prorated.*

*In the event that time is used / lost at load ports solely for Charterers' convenience, they will be responsible therefore.*

*DEVIATION 27   The vessel shall have liberty to tow and to be towed and to assist vessels in distress and to deviate for the purpose of saving life or property, to sail without pilots and to call at any ports in any order, for bunkering or other purposes or to make trial trips after notice, or adjust compasses and/or radio equipment and reasonable exercise of any of these liberties shall not be deemed to be a departure from the contractual route.*

*AGENTS 28   LOADING AND DISCHARGING PORTS:*
*to be advised*

*29   Owners confirm that the vessel is insured with a P.and I. Club who is a member of the International Group of P. and I. Clubs. Owners also confirm that the vessel has full coverage.*

*LMAA SMALL CLAIMS CLAUSE   30   Notwithstanding anything contained in the Arbitration Clause to the contrary, should neither the claim nor the counterclaim exceed USD50,000.- exclusive of interest on the sum claimed, costs of arbitration, and legal expenses, if any, it is hereby agreed the dispute is to be governed by the London Maritime Arbitrators Small Claims Procedure 1989.*

*31 Deleted.*

*32 Deleted.*

*Addendum No. 1 to be incorporated in this Charter Party.*

**CHARTERERS:**                                                                                           **OWNERS:**

*Addendum No.1*

*TO THE CHARTER-PARTY OF M/V "DONGA RHEA OR SUBSTITUTE"*
*DATED LAUSANNE, 25TH FEBRUARY 2008*

It has been today mutually agreed between Messrs. Swissmarine Services S.A. as Owners and Messrs. Louis Dreyfus Energy as Charterers, that :

M/V "OCEAN VANGUARD" is nominated as sub for the MV "DONGA RHEA". ETA 20th March. Expected intake 72000mt in 3 holds. Working on exact stowplan when will revert.

-M/V "OCEAN VANGUARD"

PAN 94 BULK

206,258 MT DWT ON 18.021 M SSW 141.2 TPC LOA 311.5 BM 50

236,534 GR

9 HO 9 HA

ALL DETAILS ABT

Lausanne, 27th February, 2008

Owners:                                                            Charterers:

This Charter Party is a computer generated copy of the Richards Bay Coal Charter Party form using software which is the copyright of Strategic Software Ltd.

This is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.