UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SWISS MARINE SERVICES S.A.,

        Plaintiff,

v.

LOUIS DREYFUS ENERGY SERVICES L.P.,

        Defendant.

**<u>OPINION</u>**
No. 08 Civ. 7981 (LBS)

APPEARANCES

EATON & VAN WINKLE
    Attorneys for Plaintiff
BY:    EDWARD W. FLOYD
        MICHAEL O. HARDISON

NOURSE & BOWLES LLP
    Attorneys for Defendant
BY:    ARMAND M. PARÉ

SAND, District Judge.

**I.     Introduction**

Following the Court of Appeal's decision in *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), holding that a court in this district can order the attachment of assets of a foreign company,[1] and as a further consequence of economic turmoil in the international maritime industry, this Court has been flooded with applications seeking attachment. These applications have in common the following: a maritime dispute between foreign corporations arising out of some transaction having no nexus to the United States; an agreement between the parties calling for disputes to be resolved by arbitration (usually in London or some other foreign forum); and an attachment, pursuant to *Winter Storm*, of funds in transit from one foreign city to another.

Numerous defendants have sought to have such attachments vacated. The Court of Appeals has made clear that attachments may be vacated "only in certain limited circumstances." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006). An attachment may not be vacated on general equitable grounds if the provisions of Rule B are satisfied.[2] The limited grounds for vacating attachment are:

---

[1] *Winter Storm* held that electronic fund transfers (EFTs) to or from a defendant can be attached by a court as the funds pass through banks located in that court's jurisdiction. *See Winter Storm*, 310 F.3d at 273. Because banking networks handling international commerce tend to use intermediary banks, and New York is a global financial capital, many of the EFTs pass through banks in this jurisdiction. The resulting surge in the number of maritime attachment cases may be considered the flood after the *Storm*.

[2] Rule B of the Supplemental Rules provides the following: "If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." The Rule does not define the phrase "found within the district," but the Second Circuit has characterized this as a two-pronged inquiry: "First, whether the respondent can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963) (citation omitted). As Judge Leval has stated:

> A maritime attachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of

>     1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Id.* at 445.

A number of cases in this district have dealt with the question of whether an attachment can be vacated because a convenient adjacent jurisdiction is available to the plaintiff and the defendant can be found in that district: that is, the defendant can be found in terms of jurisdiction and can be found for service of process. *See Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963). These cases have dealt with issues relating to the geographic location of the allegedly convenient adjacent district. Here, Plaintiff Swiss Marine Services S.A. ("Swiss Marine") resists Defendant Louis Drefyus Energy Services, L.P.'s ("LDES") motion to vacate on these grounds and one other ground not raised in prior cases. Swiss Marine asserts that the purported convenient adjacent districts (Connecticut, New Jersey, and the Northern District of New York) are not in fact convenient because absent the ability to attach assets, LDES is not subject to any suit in any of these districts at this stage of the proceedings, before an arbitration award has been granted. (Tr. Oral Arg. at 15–16, Oct. 30, 2008.)

For the reasons stated below, we find that Connecticut is a convenient adjacent jurisdiction and that all of the criteria for determining convenience have been satisfied.[3] We

---

>     action has sufficient contacts with the district to permit the court to exercise in personam jurisdiction over the defendants . . . and in addition can be found within the geographical confines of the district for service of process.

*Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 122 (S.D.N.Y. 1979). A maritime attachment will lie unless the defendant can be "found" under both prongs. *Id.*

[3] We reach the same result as Judge Hellerstein, who recently vacated an order of attachment against Louis Dreyfus Corporation based on the defendant's presence "in New York State and nearby districts." *Dominion Bulk Int'l S.A. v. Louis Dreyfus Corp.*, No. 08 Civ. 8507 (S.D.N.Y. Oct. 28, 2008).

2

conclude that the requirement that a defendant be subject to suit relates to jurisdictional presence, not to whether a cause of action could be asserted at this time in that jurisdiction.

## II.     The Facts

The underlying events involve a contract of charter party, in which LDES agreed to charter from Swiss Marine a vessel for the carriage of coal from South Africa to France.  LDES allegedly made an anticipatory breach of the contract.  The underlying dispute is subject to arbitration in London pursuant to English law.  (Compl. ¶ 20.)  Swiss Marine moved, pursuant to Rule B of the Supplemental Rules, for an order of attachment in this district on the assets of LDES in the Southern District of New York.  The order was granted on September 15, 2008 and funds were attached in the amount of approximately $3.6 million.

LDES brings this motion to vacate the attachment of its property based on its jurisdictional presence in three adjacent districts—the District of Connecticut, the District of New Jersey, and the Northern District of New York.  LDES asserts jurisdictional presence in Connecticut because its principal office in North America is located in Wilton, Connecticut.  LDES is qualified to do business in Connecticut and service can be made on LDES at its Wilton office, where officers of LDES are located.  (Scheinman Decl., Paré Aff. Ex. 1.)  Defendant also states that it is subject to *in personam* jurisdiction in New Jersey based on its significant business there, which in the period of September to October 2008 was in excess of $89 million.  (Gilman Decl., Paré Aff. Ex. 2.)  LDES further asserts that it is subject to *in personam* jurisdiction in the Northern District of New York based on sales transactions during the period of September to October 2008 in excess of $128 million.  (*Id.*)  LDES is registered to do business in both New Jersey and New York and has a designated agent for service of process in West Trenton, New Jersey and in Albany, New York.  (Ex. B & C to Scheinman Decl., Paré Aff. Ex. 1.)

We will evaluate the convenience arguments for these districts based on geographic considerations, before turning to Swiss Marine's argument that regardless of proximity, the inability to bring an immediate suit defeats LDES's motion for vacatur.

### III. Is Connecticut a Convenient Adjacent District in Terms of Geography and Accessibility?

In evaluating whether Connecticut is a convenient adjacent district, we focus on the geographical considerations. In explaining that a remote district may be less convenient, *Aqua Stoli* intended to focus the district courts' inquiry on the term "convenient." 460 F.3d at 444.

We dispose of two ancillary issues at the outset that were contested by Swiss Marine. First, we agree with Judge Rakoff that to be convenient, an adjacent district need not be in the same state as the attaching district. *Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.,* No. 08 Civ. 1239, 2008 U.S. Dist. LEXIS 25028, at *11 n.3 (S.D.N.Y. Apr. 1, 2008), *motion for reconsideration denied*, 543 F. Supp. 2d 338 (S.D.N.Y. 2008) (holding that the District of New Jersey is convenient to this district). *But see First Am. Bulk Carrier Corp. v. Van Om-Meren Shipping (USA) LLC*, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008). Second, we find that abuse is not the dispositive factor set out by the Second Circuit. As *Aqua Stoli* noted, "[m]aritime attachments arose because it is frequently . . . more difficult to find property of parties to a maritime dispute," and a plaintiff should not have to "scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment." 460 F.3d at 443. The purpose of Rule B indicates that the core inquiry is whether a plaintiff can easily find the defendant to satisfy judgment, and the focus of analysis should not be on abuse of process. *But see Stolt Tankers B.V. v. Geonet Ethanol, LLC*, No. 08 Civ. 4382 (S.D.N.Y. Nov. 5, 2008). We thus turn our attention to geographic considerations.

4

Courts are not to engage in a fact-intensive inquiry into the substantiality and nature of a defendant's business activities when determining whether an attachment should be maintained. *Aqua Stoli*, 460 F.3d at 447 (holding that "Rule B specifies the sum total of what must be shown for a valid maritime attachment"). However, *Aqua Stoli*'s convenient adjacent jurisdiction rule calls for an evaluation of arguments presented as to why an adjacent jurisdiction may be "less obviously 'convenient' to the plaintiff." *Id.* at 444. In this case, the inquiry is not conducted for the purpose of weighing Swiss Marine's need for security against the burden of attachment on LDES. *Id.* at 439. Rather, it is for the purpose of determining whether the arguably more remote nature of a suit in Connecticut renders it so "less obviously convenient" to Swiss Marine that the Court cannot grant vacatur in this district.

LDES is an international energy company with its principal North American office in Wilton, Connecticut. LDES conducts its business and may be served with process in Wilton. (Ex. A to Scheinman Decl., Paré Aff. Ex. 1.) Although Wilton is not "across the river" from the Southern District of New York in the literal sense that the Eastern District is across the East River or that Hoboken, New Jersey is across the Hudson River, Connecticut is nonetheless an adjacent jurisdiction. Swiss Marine, a foreign business with its principal place of business in Geneva and offices in Bermuda and Tokyo (Swissmarine.com, Paré Aff. Ex. 3), offers no reasons why the District of Connecticut is less convenient for them than the Southern District of New York. Instead, Swiss Marine argues that Wilton, Connecticut is "approximately 60 miles from Manhattan and . . . beyond the scope of geographical distances that have separated districts previously held to be convenient" for Rule B purposes. (Swiss Marine Mem. 7.)

However, as discussed above, this Court does not find any controlling case law holding that a district must be within the same state in order for it to be a convenient adjacent

5

jurisdiction.  Furthermore, the appropriate inquiry is not whether a district is "too remote," as Swiss Marine characterizes it (Swiss Marine Mem. 5), but whether the purported remoteness of a jurisdiction renders it inconvenient for the plaintiff.  Swiss Marine's distinction of physical distance, without arguing convenience, is not sufficient to defeat LDES's argument for vacatur.

The remaining question, related to accessibility, is whether any trial that might take place in Connecticut would inconvenience Swiss Marine.  Hypothetically, once the arbitration is concluded in London, one party might contest the validity of the arbitral award (for example, by alleging arbitrator misconduct) or the prevailing party may seek to enforce the award.  This might raise convenience issues relating to the necessity of calling witnesses into court in Bridgeport and obtaining counsel who is authorized to practice in that jurisdiction.  Ultimately this Court finds that given the availability of electronic filing, service by mail, and the relatively straightforward process of seeking to appear *pro hac vice*, it is difficult to see how this works any inconvenience to Swiss Marine.[4]

LDES is subject to *in personam* jurisdiction in Connecticut, where it can be compelled to appear in court and where its assets can be reached to satisfy an arbitral award, rendering the historic purpose of attachment inapplicable.  If Swiss Marine prevails in the London arbitration and subsequently wishes to bring an enforcement action, it would be able to do so in Connecticut based on the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, 21 U.S.T. 2517, implemented by 9 U.S.C. § 201 *et seq*.  The Convention provides subject matter jurisdiction, and the district court in Connecticut would have *in personam* jurisdiction over LDES because of the situs of its North American business headquarters in Wilton, a "burgeoning office" conducting energy business, where LDES officers

---

[4] As LDES points out in its reply brief, under the rules of the District of Connecticut, suit can be filed in Bridgeport via e-mail or by mailing the complaint and a check to the court, and service can be made via mail or via hand delivery by telephoning a process server in the particular city. (Reply Mem. 6.)

6

are located.  (Tr. Oral Arg. at 7, Oct. 30, 2008.)  *See Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416–17 (1984).

We find that the District of Connecticut is a convenient adjacent district in this case and this is sufficient grounds upon which to vacate the attachment.  For the sake of completeness, and because it presents a question of foreign arbitral award enforcement that has not yet been resolved in this Circuit, we will also evaluate LDES's presence in New Jersey and the Northern District of New York.

## IV. Are the District of New Jersey and the Northern District of New York Convenient Adjacent Jurisdictions?

LDES does business in New Jersey and New York but does not have a physical office in either state.  Swiss Marine argues that *Ivan Visin* requires a defendant to have an actual place of business in order to meet the convenient adjacent standard.  (Swiss Marine Mem. 8.)  This argument misstates the law, as the *Aqua Stoli* standard for vacatur rests on whether the defendant is subject to *in personam* jurisdiction in a convenient adjacent jurisdiction.  Thus, the appropriate inquiry is not based solely on whether a defendant maintains a physical office, but on whether a defendant maintains sufficient contacts with the forum state so that a finding of jurisdiction would not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

LDES has submitted affidavits regarding the volume of business that it conducts in New Jersey.  Specifically, the declaration of LDES's Chief Financial Officer states that from September 1, 2008 to October 9, 2008 its business in New Jersey was in excess of $89 million. (Gilman Decl., Paré Aff. Ex. 2.)  While this establishes that LDES is doing a significant amount of business in New Jersey, sales transactions alone do not rise to the level of "continuous and

systematic" activity that is necessary for the exercise of general *in personam* jurisdiction to enforce a cause of action not arising out of LDES's activities in New Jersey. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–46 (1952). LDES concedes that it does not have an office, executive, or other individual representative of LDES in New Jersey. (Tr. Oral Arg. at 4, Oct. 30, 2008.) LDES's alleged business and contacts in the Northern District of New York are nearly identical to its business and contacts in New Jersey. (Gilman Decl., Paré Aff. Ex. 2.) The limited nature of LDES's contacts in these two districts creates uncertainty as to whether it would satisfy the *in personam* jurisdiction requirement of *Aqua Stoli*.[5]

However, as LDES conducts a burgeoning energy business in its North American headquarters in Connecticut, in terms of geographic proximity, LDES can be found in a convenient adjacent jurisdiction. The remaining question is whether the inability of Swiss Marine to bring an immediate suit on the merits in Connecticut renders that district inconvenient under *Aqua Stoli*.

## V.  Does Inability to Bring an Immediate Suit on the Merits in Connecticut Render that Jurisdiction Inconvenient?

---

[5] Although *Aqua Stoli* clearly states that vacatur is not available unless an adjacent district has jurisdiction over the defendant, it nevertheless raises the question of what function is served by a jurisdictional requirement in a case where enforcement of an arbitral award is at issue. Because we find that LDES's presence in Connecticut satisfies the *Aqua Stoli* standard for vacatur, this Court does not have occasion to resolve the question of whether personal jurisdiction is required to enforce an arbitration award. Although the Second Circuit has not yet ruled on the issue, *see Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 479 F. Supp. 2d 376, 380 (S.D.N.Y. 2007), we note that several courts of appeals decisions have recently applied minimum contacts analysis to foreign arbitral award enforcement actions. *See Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 212 (4th Cir. 2002); *Base Metal Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 47 Fed. Appx. 73, 76 (3d Cir. 2002); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002).

  We observe, however, that *in personam* jurisdiction may not be required when the action is one for enforcement of an arbitration award. In *Shaffer v. Heitner*, 433 U.S. 186 (1977), the Supreme Court distinguished the attachment of property to support jurisdiction for adjudicating the underlying claim from the attachment of property as security for a judgment being sought in another forum. Referring to the Full Faith and Credit clause, the Court reasoned in dictum that once another court has determined the merits of a case, there is no unfairness in permitting an enforcement action in any jurisdiction where the defendant has property. *Id.* at 210 n.36. This Court believes that the *Shaffer* rationale would apply with equal force to the enforcement of foreign arbitral awards. If the Court of Appeals were to so find, it would call into question the purpose of *Aqua Stoli*'s requirement that the defendant be subject to *in personam* jurisdiction in cases where enforcement of an arbitration award, and not a suit on the merits, is at issue.

8

Swiss Marine puts forth an argument not yet considered in depth by this district—whether in order to be convenient, an adjacent district must be one in which the defendant is subject to an immediate suit on the merits. (Tr. Oral Arg. at 15–16, Oct. 30, 2008.) As noted above, the underlying dispute in this case is subject to arbitration in London, and the parties agree that no suit can presently be brought on the merits in a U.S. court. Swiss Marine argues that no suit can be brought prior to an arbitration award in a district in which LDES is found,[6] because attachment is unavailable under Rule B and a suit on the merits is precluded by the contract provision providing for arbitration.

Although foreign arbitration provisions have been used by parties in other maritime attachment cases,[7] to date only one case, *Stolt Tankers*, has addressed this issue. The analysis in that case rested on an abuse of process standard that, for the reasons laid out above, was not the determinative factor underpinning *Aqua Stoli*'s adjacent district rule. *Stolt Tankers*, slip op. at 16. The resolution of this issue depends on whether the convenient adjacent jurisdiction standard turns on geography or on the plaintiff's ability to bring a suit on the merits against the defendant in the adjacent jurisdiction. We conclude that "convenient" refers to geographic proximity of a district in which the defendant is subject to suit as a matter of personal jurisdiction—that is, present in the district and subject to service of process. We reach this conclusion based on a textual reading of Rule B and *Aqua Stoli*.

---

[6] As set forth above, a defendant is "found" within a district if two inquiries are met. *Seawind Compania*, 320 F.2d 582. First, a defendant must be "found" for jurisdictional purposes through evidence that it is engaged in sufficient activity and maintains sufficient contacts in the district to subject it to personal jurisdiction. *See Int'l Shoe*, 326 U.S. at 316. Second, a defendant must be found for purposes of service of process.

[7] The disputed contract in *Ivan Visin* provided for arbitration in London under English law. The arbitration had already commenced at the time the plaintiff requested the order for maritime attachment. Complaint at 3, *Ivan Visin*, 543 F. Supp. 2d 338 (S.D.N.Y. 2008) (No. 08 Civ. 1239). The court did not address the issue when holding that New Jersey was a convenient adjacent district. Similarly, in *Far Eastern*, the plaintiff had already commenced arbitration in London when it applied for an order of attachment in the Southern District of New York. Memorandum of Law of Plaintiff at 1, *Far Eastern Shipping*, 2008 AMC 721 (07 Civ. 11375). In vacating the attachment based on the defendant's presence in the Eastern District of New York, the court did not discuss the availability, or lack thereof, of a suit on the merits.

9

Starting with the language of *Aqua Stoli*, we find that the Second Circuit set forth a geographic standard in discussing the relationship between remoteness and convenience. 460 F.3d at 444. In explaining that a remote district may be less convenient, the court's reference to geographical proximity indicates it was considering physical distance in sketching the contours of the rule. Remoteness frames the inquiry as one of whether the physical distance of an adjacent jurisdiction renders it so "less obviously 'convenient' to the plaintiff" that the court could not equitably vacate the attachment. *See Aqua Stoli*, 460 F.3d at 444.

Although not the grounds for our conclusion, we note that this result is consistent with the purpose of Rule B. The Supreme Court has noted that maritime attachments serve two functions: "first, to compel appearance; secondly, to condemn for satisfaction." *J. Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 489 (1825). The Court has emphasized that "the primary object of the attachment is to obtain an appearance" in situations where "a defendant has concealed himself, or has absconded from the kingdom, so that he cannot be arrested." *Id.* at 491–92. It follows that the underlying rationale of Rule B is to lessen the risk that a maritime plaintiff may obtain a judgment that it cannot enforce because it is unable to locate a forum in which the defendant has assets and is subject to suit. Where a defendant is jurisdictionally present in the attaching district or in an adjacent district, the ability of the court to exercise *in personam* jurisdiction over the defendant satisfies the plaintiff's need for assurance that it will be able to call the defendant into court to satisfy a judgment.[8]

---

[8] We note a further reason why the availability of an immediate suit on the merits is not the lynchpin in evaluating attachment and vacatur. If, hypothetically, LDES were to be "found" in this district both in terms of jurisdiction and in terms of having an agent for service of process, a Rule B attachment would not issue. *See Seawind Compania*, 320 F.2d at 581. In that hypothetical world, Swiss Marine would still be unable to bring a suit on the merits because of the foreign arbitration clause in the underlying contract. This represents a policy judgment on the part of the Rule B drafters that the jurisdictional presence of a defendant and its ability to be served with process provides adequate assurance for the plaintiff that it will be able to find the defendant to satisfy a judgment.

This reasoning applies equally in the situation where a defendant is jurisdictionally present in a convenient adjacent district. When a defendant can be found in a convenient adjacent jurisdiction—when it transacts sufficient

10

## VI. Conclusion

As discussed by the Second Circuit Court of Appeals, the historic purpose behind maritime attachments is to relieve a plaintiff of the burden of scouring the globe to find a proper forum for suit, since traditionally maritime parties are peripatetic and their assets are transitory. *Aqua Stoli*, 460 F.3d at 443. In this case, the parties do not contest that LDES is jurisdictionally present in the District of Connecticut, and Swiss Marine has not demonstrated why Connecticut would be an inconvenient jurisdiction. Because LDES is subject to *in personam* jurisdiction in a convenient adjacent jurisdiction, this Court grants LDES's motion to vacate Swiss Marine's attachment. As the attachment is the only basis for jurisdiction in this Court, Swiss Marine's complaint is also dismissed.

**SO ORDERED.**

Dated: November 17, 2008
       New York, NY

_____
U.S.D.J.

---

business, has an office, officers, assets, or some combination thereof—the defendant is not peripatetic and the plaintiff is not entitled to an attachment.

We recognize that a plaintiff who cannot attach assets because the Rule B requirements are not met, and yet is unable to bring a suit on the merits because of a choice of forum or arbitration clause in its contract, may have a need for security. Judge Leval recognized the dilemma in *Integrated*, when he said of the two-pronged Rule B test:

> This test amounts to a somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security . . . if the defendant is present . . . and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect *in personam* jurisdiction if the defendant is not present in both senses.

476 F. Supp. at 122. The Court of Appeals found, however, that "Congress chose a determinate rule rather than a flexible standard" in setting the requirements for Rule B, and this Court is bound by that rule. *Aqua Stoli*, 460 F.3d at 443. If there is a shortcoming, then, it originates with the requirements for attachment under Rule B.